IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**CEDRIC McCASKILL**                                                    **PLAINTIFF**

**VERSUS**                                  **CIVIL ACTION NO. 1:14cv24-HSO-RHW**

**DEPARTMENT OF HEALTH
AND HUMAN SERVICES, SOCIAL
SECURITY ADMINISTRATION**                                   **DEFENDANT**

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Cedric McCaskill filed this action January 22, 2014 seeking judicial review of the denial of his claim for Social Security disability benefits.

### Procedural History

On February 18, 2009, McCaskill filed application for Social Security disability insurance benefits, alleging he became disabled October 27, 2007 at age 39. Specifically, McCaskill asserted disability due to back problems and problems with hearing on the left. [9, p. 271] The claim was denied initially June 19, 2009, and on reconsideration on August 17, 2009. [9, pp. 183-86, 191-93] Administrative Law Judge (ALJ) Lanier Williams conducted a hearing on McCaskill's claim on January 5, 2011, which resulted in a January 24, 2011 decision denying the claim. That decision was remanded by the Appeals Council on March 29, 2012 for further findings by the ALJ, particularly with respect to any mental impairment McCaskill might have. [9, pp. 180-182] Judge Williams conducted a second hearing on July 24, 2012, received additional evidence and evaluations, and again denied the claim on November 26, 2012. [9, pp. 29-43) On November 27, 2013, the Appeals Council denied review of the November 26, 2012 decision [9, pp. 6-8], prompting the filing of the action presently before this Court.

1

  Represented by counsel throughout the administrative proceedings, McCaskill testified at both hearings.  At the first hearing he testified he finished high school but was in special education classes the whole time, and that he can read some things but not others.  For fifteen years (1992-2007), McCaskill worked as a longshoreman.  On that job, the clerks would show him what they wanted done.  McCaskill testified he first hurt his back on the job in 2004 lifting a saline tank, but the doctor just kept him off work a couple of weeks and he went back to work.  Three years later, he ended his longshore work, following another on the job back injury on October 28, 2007, when he ran the machine he was operating into a pole in the warehouse.  He had surgery on his back in January 2008.  He testified he was "very, very, very happy" with the results of the surgery, but thereafter could not find a job.  He tried security work but it involved too much paperwork and reading, so he tried to find things to do on his own.  McCaskill drives, operates a riding lawnmower and power washer, and enjoys doing mechanic work.  He lives alone, prepares his own meals, grocery shops, cleans and does household chores and laundry, goes out and visits friends.  McCaskill testified he has good days and bad days.  His hearing is no longer a problem since he got hearing aids.  [9, pp. 132-157]

  Vocational Expert Kelly Hutchins testified at the first hearing that McCaskill is illiterate, without transferrable skills from his past longshore work; his skills are in equipment operation and forklift operator is deemed medium level work.  Considering his illiteracy, limitation to light work, and postural activities at occasional except for no ladder climbing, and a sit/stand option at discretion, Hutchins testified there were available jobs McCaskill could do: bench assembler and laundry folder which are both light work with a skill level of 2, and silverware wrapper which is light with a skill level of 1.  [9, pp. 155-158]  On January 24, 2011, ALJ Williams issued his decision finding McCaskill had not worked since October 2007 and has severe impairments of

status post back surgery and illiteracy, but was not disabled as defined by the Social Security Act for the period from October 27, 2007 through the date of the decision. [9, pp. 166-174] The Appeals Council remanded the matter to the ALJ on March 29, 2012, for further hearing and instructed the ALJ to (1) obtain updated medical records from McCaskill's treating and other medical sources including medical source statements regarding what McCaskill can do despite his mental and physical impairments; (2) obtain a mental consultative examination including a medical source statement regarding what McCaskill can do despite his mental and physical impairments; (3) obtain evidence from a medical expert to clarify the nature and severity of McCaskill's physical and mental impairments "if warranted"; (4) evaluate McCaskill's subjective complaints and provide rationale in accordance with disability regulations pertaining to evaluation of symptoms; and (5) obtain supplemental vocational evidence to clarify the demands of McCaskill's past relevant work and/or the effect of assessed limitations on his occupational base. [9, p. 181]

   At the second hearing before ALJ Williams on July 24, 2012, McCaskill again testified about his back injuries and surgery, and having good days and bad days, and stated he takes Lortab when he has bad pain, but not many. He also often uses a heating pad, massage or Jacuzzi. McCaskill testified he has applied for several jobs, but cannot get hired because of his back. He again testified he uses his riding mower, travels in his car – he stated he drove to New Orleans for physical therapy for two and a half years and could probably drive from here to Atlanta (approximately six hours). He sometimes helps his friend as a mechanic, handing him tools and holding a light for him, but changing tires leads to pain. [9, pp. 71-78] Vocational expert Robert E. Walker, Jr. testified that a 43-year old illiterate person limited to light exertional work, postural activities occasional but no climbing ladders, scaffolds or ropes, with a

3

sit/stand/walk option for up to 30 minutes at a time, low stress, no timed production work, and needing simple routine repetitive work, could work as a parking attendant or ticket taker, both of which are light work with a skill level of 2, or as a silverware wrapper which is light work with a skill level of 1, and that there are such jobs available in the state and nation. Mr. Walker stated the person must be able to maintain attention/concentration for two to two and a half hours at a time to keep a job, and that if the person were unable to perform activities within a schedule, maintain regular attendance or be punctual, or had limited ability to complete a normal day or week without interruptions from psychological symptoms or to perform at a consistent pace without unreasonable frequency or length of rest periods, he could be out of the job market. [9, p. 80-87]

On November 26, 2012, ALJ Williams issued a 14-page decision based on consideration of all the evidence, finding McCaskill "has not been under a disability within the meaning of the Social Security Act from October 27, 2007, through the date of the decision."

Standard of Review

Judicial review of a final decision of the Commissioner of Social Security is limited to determining whether substantial record evidence supports the Commissioner's factual findings, and whether such findings are reached through the application of correct legal standards. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The Court reviews the entire record to determine whether substantial evidence supports the Commissioner's decision. *Villa*, 895 F. 2d

at 1022.  Credibility of witnesses and conflicts in the evidence are issues for resolution by the Commissioner, not the Court.  It is not the Court's prerogative to substitute its judgment for that of the Commissioner or to re-weigh the evidence.  *Harris v. Apfel*, 209 F.3d at 417(quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995));  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988)(a finding of "no substantial evidence" is appropriate only if no credible evidentiary choices or medical findings support the decision); *Selders v. Sullivan*, 914 F. 2d 614, 617 (5th Cir. 1990).  Factual findings supported by substantial record evidence are conclusive and must be upheld.  *Estate of Morris v. Shalala*, 207 F. 3d 744, 745 (5th Cir. 2000); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).  The Court may reverse a decision of the Commissioner if it is based upon faulty legal analysis, but should accept the Commissioner's legal conclusions if they are within reasonable meanings of the statutory or regulatory language.  *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 841-44 (1984).  Absent a finding that the decision is unsupported by substantial evidence or that the Commissioner applied an incorrect legal standard, the Court must affirm the Commissioner's decision.  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

<u>Preliminary Matters</u>

The docket in this case shows that the Commissioner filed her answer [8] and the administrative record [9] on May 5, 2014.  In accordance with the Court's briefing order [3], McCaskill's memorandum brief was due June 4, 2014, but the Court granted McCaskill an extension of that deadline until July 18, 2014.  [Text order entered 5/29/2014]  McCaskill filed his memorandum as required [12], [13], urging among other things, that the record in this matter is incomplete because it contains no response from Dr. Patsy Zakaras to the ALJ's July 2012 letter to her regarding validity of test scores contained in her April 24, 2012 report, Exhibit B25F

in the administrative record. [9, pp. 644-651] McCaskill's lawyer had issued and served [11] a subpoena commanding Dr. Zakaras to produce all her records/reports/evaluations of McCaskill and any response she made to ALJ Williams' correspondence of July 27, 2012. McCaskill attached to his memorandum brief a June 19, 2014 letter from the Office of the General Counsel of Social Security to McCaskill's lawyer "to again address the subpoena" to Dr. Zakaras. This letter references a telephone conversation with counsel of the same date as well as a prior "letter of June 9, 2014," and advises counsel that Plaintiff's subpoena to Dr. Zakaras does not comply with requirements "for a valid legal subpoena for records," and that the Social Security Administration had already filed a "complete copy of all the evidence that concerns the case at bar. Dr. Zakaras has nothing further to provide." [13-2] The Commissioner filed [14] her memorandum on September 12, 2014, urging the Court to affirm the administrative decision and attaching to her memorandum the June 9, 2014 letter from the General Counsel to McCaskill's attorney which was referenced in the letter attached to Plaintiff's memorandum. [14-1]

On September 23, 2014, McCaskill filed [16] a "motion for an expedited status conference" and [17] accompanying memorandum in support, arguing that by attaching the June 9, 2014 letter from the General Counsel to McCaskill's lawyer, which "had not been previously made a part of the record in this matter," Counsel for the Commissioner unilaterally enlarged the record without authority from the Court. The Commissioner filed [19] her opposition to the motion for expedited status conference, urging that no such conference was necessary as the Commissioner filed with the Court the certified copy of the Administrative Record upon which the Commission's decision was based, and the parties had already filed their motions and memorandum briefs. The Commissioner contends McCaskill has produced no

6

evidence to show the record is incomplete, and submits that the certified record before the Court is sufficient to permit meaningful judicial review.

On November 18, 2014, McCaskill's attorney served another deposition subpoena on Dr. Zakaras [20].  The Commissioner responded by filing [21] an emergency motion for protective order to prohibit the deposition on grounds that (1) the Court's review in this case is limited to whether substantial *record* evidence supports the Commissioner's decision and whether the decision was based on application of proper legal standards; (2) McCaskill speculates, but provides no substantiating evidence, that there exists a response from Dr. Zakaras to the ALJ's letter; (3) whether Dr. Zakaras responded is irrelevant because the record before the Court contains sufficient evidence for the ALJ to render an informed decision and for the Court to conduct a meaningful review of that decision; and (4) the ALJ's decision indicates he gave significant weight to Dr. Zakaras's April 14, 2012 consultative psychological examination.

The undersigned finds Plaintiff has failed to produce evidence to support his contention that the record is incomplete for lack of a response from Dr. Zakaras to the ALJ's letter.  The undersigned further finds that since neither the letter attached to Plaintiff's memorandum nor the letter attached to Defendant's memorandum is part of the administrative record, neither will be considered in reviewing the decision at issue.  The Court finds the 659-page record sufficient to permit meaningful review of the administrative decision, which obviates any need for a status conference or a deposition of Dr. Zakaras.  *See*, *Brady v. Apfel*, 41 F.Supp.2d 659, 668 (E.D. Tex. 1999) (rejecting complaint that the record was incomplete where the Commissioner filed certified record of proceedings including all evidence the ALJ considered); *Bracey v. Colvin*, 2013 WL 4678493 (S.D. Miss. 2013).  The undersigned will therefore recommend that [16]

Plaintiff's motion for status conference be denied, and that [21] Defendant's motion for protective order prohibiting the deposition be granted.

Analysis

The record clearly demonstrates that Judge Williams applied the correct law for determining disability – the five-step sequential evaluation process set out at 20 C.F.R. 404.1520(a)(i-v) and 416.920(a). Step one requires a determination whether the claimant is engaging in substantial gainful activity, *i.e.*, work activity that involves significant physical or mental activities and is usually done for pay or profit. Judge Williams found McCaskill had not engaged in such activity since October 27, 2007, the alleged date of onset of disability.

Step two requires determination of whether the claimant has a medically determinable impairment, or a combination of impairments, which is severe, *i.e.*, which significantly limits his ability to perform basic work activities. Where medical and other evidence establishes only a slight abnormality or combination of slight abnormalities that have no more than a minimal effect on one's ability to work, the impairment or combination of impairments will not be deemed severe. Judge Williams found McCaskill has severe impairments of status post back surgery, illiteracy and depression, and that the impairments cause significant limitation in his ability to perform basic work-related activities.

Step three requires determination of whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment or combination of impairments is of such severity and meets the duration requirement, the claimant is disabled; if it does not, the analysis continues to step four. Judge Williams found McCaskill's physical impairments do not reach the level of severity to meet or equal any of the relevant listings. The ALJ found

McCaskill's allegations regarding hearing and vision loss were not severe, but constituted only a slight abnormality of such minimal effect as to not be expected to interfere with his ability to work.  While testing showed McCaskill had a severe unilateral hearing loss, he testified in January 2011 that since getting hearing aids, he no longer has a problem hearing.  Although he has a history of congenital cataract and poor vision in his right eye since childhood, he had proven able to work successfully in the past with his visual impairment, and no evidence supports a change in vision since he last worked.

All of McCaskill's assignments of error argument focus on the evidence regarding his mental impairments.  McCaskill argues that Dr. Zakaras's April 24, 2012 examination finding McCaskill has a full scale IQ score of 59, and Dr. Fontanelle's April 2009 report of a full scale IQ of 69, bring him within Listing 12.05, and entitle him to a presumptive finding of disability.

Evaluating alleged disability due to mental disorders is covered in 20 C.F.R. § Pt. 404, Subpt. P, App. 1, which provides in pertinent part:

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
> OR
> B. A valid verbal, performance, or full scale IQ of 59 or less;
> OR
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
> OR
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

9

>    1. Marked restriction of activities of daily living; or
>    2. Marked difficulties in maintaining social functioning; or
>    3. Marked difficulties in maintaining concentration, persistence, or pace; or
>    4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

      While Dr. Zakaras's found in her psychological evaluation of April 24, 2012 that McCaskill's full scale IQ was 59, the ALJ noted, and the record shows, that Dr. Zakaras rated McCaskill's ability to adjust to a job as good with respect to following work rules, relating to co-workers, dealing with the public, using judgment, interacting with supervisors, dealing with work stresses and functioning independently, and fair with respect to maintaining attention and concentration.  Dr. Zakaras found McCaskill had good ability to understand, remember and carry out simple job instructions; fair ability with respect to complex or detailed job instructions; good ability to maintain personal appearance and demonstrate reliability, and unlimited ability to behave in an emotionally stable manner and relate predictably in social situations.  Dr. Zakaras's psychological evaluation noted that McCaskill takes no medication, has not been in counseling, has no history of psychiatric hospitalization or of substance abuse.  He lives alone, drives, takes care of his yard cleaning and mowing, and does household chores such as cooking and laundry.  Dr. Zakaras concluded that McCaskill seems "capable of performing routine, repetitive tasks," of "following and understanding directions," and "responding to supervision and relating to others."  [9, pp. 644-651]  The ALJ gave "significant weight" to Dr. Zakaras's assessment "because it appears to comport with the psychological examinations, claimant's reported activities of daily living, his work-related activities, and the record as a whole." [9, pp. 40-42] The ALJ found the severity of McCaskill's mental impairments, singly or in combination, did not meet or medically equal the criteria of Listing 12.05C because the evidence does not support significant adaptive deficits before age 22, despite claimant's having been in special education

classes in school.  As ALJ Williams noted, "The claimant's work record reveals a long period of sustained employment as a longshoreman off-shore, which indicates a person with substantial adaptive skills." [9, p. 32]

McCaskill claims he met Listing 12.05C when Dr. Fontanelle confirmed the validity of the IQ score of 69 from his 2009 test.  However, as the regulations clearly state, the IQ test score alone does not establish disability.  The claimant must demonstrate that his impairment meets *all* the specified medical criteria of the listing, rather than merely some of the criteria.  First he must satisfy the diagnostic definition of intellectual disability – he must demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."  *Randall v. Astrue*, 570 F.3d 651, 656-662 (5th Cir. 2009); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.  In *Heller v. Doe*, 509 U.S. 312, 329 (1993), the Court described "adaptive functioning" as a person's "effectiveness in areas such as social skills, communication, and daily living skills, and how well the person meets the standards of personal independence and social responsibility expected of his or her age by his or her cultural group." Adaptive activities include cleaning, shopping, cooking, maintaining a residence, taking public transportation, and caring appropriately for grooming and hygiene.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1200(C)(1).  The record amply demonstrates that Plaintiff attends to all these activities for himself – he cleans and mows his own yard, lives by himself, does his own housekeeping, shopping, laundry, cooking or getting his own meals, drives himself wherever he needs or wants to go, and attends to his own grooming and hygiene.  As previously discussed, Dr. Zakaras also found him capable of performing routine, repetitive tasks, following and understanding directions, responding to supervision, relating to others, etc.  Even Dr. Fontenelle found

McCaskill showed "relative strength in his social adaptive living or range of independent living typically expected on day to day basis." [9, p. 620]  This evidence, as well as McCaskill's sustained 15-year period of employment as a longshoreman, supports the ALJ's finding that despite the reported IQ scores and the fact that McCaskill had been in special education classes in school, McCaskill did not have the adaptive deficits required by Listing 12.05.  [9, p. 32]  The ALJ did not reject either of the IQ test scores found by Dr. Zakaras or Dr. Fontenelle.  In his meticulous evaluation of the evidence the ALJ acknowledges both those test scores, but he found McCaskill failed to show the existence of the required deficits in adaptive functioning.  Furthermore, he failed to produce evidence of the requisite marked restriction of daily living activities, marked difficulties in social functioning or in maintaining concentration, persistence or pace, and noted that the record contains no evidence of repeated episodes of decompensation of extended duration.

   The  ALJ gave significant weight to Dr. Fontenelle's finding that McCaskill experiences depression, but did not give significant weight to his opinions that McCaskill's pain symptoms and depression compromised his ability to perform routine, repetitive tasks.  [9, p. 40]  In so finding, the ALJ cited to Plaintiff's own testimony that he takes very little pain medication and manages with over-the counter medications; that when he can get it, he actually engages in work activities, *e.g.*, mowing yards and mechanic work; and the record lacks evidence that Plaintiff suffers from severe disabling depression.

   At the fourth step, the claimant's residual functional capacity and past relevant work are considered.  If the claimant can still do his past relevant work, he is not disabled.   The ALJ concluded McCaskill could not return to his former longshore employment.  After carefully evaluating all the evidence, the ALJ found the objective medical evidence supports the residual

functional capacity assessment that McCaskill's back impairment, illiteracy and depression limit McCaskill to a light level of exertion with these restrictions: lifting no more than 20 pounds at a time; sitting for approximately six hours out of an eight-hour workday; standing a total of no more than six hours of an eight hour workday; no climbing of ladders, scaffolds or ropes; with a sit/stand option allowing for standing/walking/sitting up to 30 minutes at a time; low stress and no timed production work or piece work and involving simple, routine, repetitive work. Plaintiff does not challenge the findings as to his physical limitations.  Faced with conflicting opinions of Plaintiff's capabilities in light of his mental impairments, the ALJ found, upon consideration of the psychological examinations, McCaskill's own testimony about his daily living activities and work related activities, and from the record as a whole, that Dr. Zakaras's assessment was more persuasive – that McCaskill is capable of performing routine, repetitive tasks, following and understanding directions, responding to supervision and relating to others.

At the fifth step, the Commission must determine from the residual functional capacity, the claimant's age, education and work experience whether the claimant can make an adjustment to other work.  If he can do other work, he is not disabled.  To support a finding that a claimant is not disabled at this step, the Commission must provide evidence demonstrating that other work exists in significant numbers in the national economy which the claimant can do.  The testimony of the vocational experts establishes that work within McCaskill's limitations does exist in significant numbers in the national and state economies, including jobs as a parking attendant, ticket taker or silverware wrapper.  The ALJ found from the whole evidence, that McCaskill could perform such work, and was not disabled, as defined by the Social Security Act, from October 27, 2007 through November 26, 2012.

## **RECOMMENDATION**

Based upon consideration of the entire record of proceedings below and controlling law, the undersigned is of the opinion that the Commissioner's final decision is supported by substantial evidence and in accord with relevant legal standards.  Accordingly, the undersigned recommends that: [16] Plaintiff's motion for status conference be denied; [21] Defendant's motion for protective order be granted; [12] Plaintiff's motion for summary judgment be denied; and the decision of the Commissioner be affirmed.

## **NOTICE OF RIGHT TO APPEAL/OBJECT**

Pursuant to Rule 72(a)(3), *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi* (Dec.1, 2011), after service of a copy of this Report and Recommendation, each party has fourteen days to serve and file with the Clerk any written objections to it.  Within seven days of service of objections, the opposing party must either serve and file a response or notify the District Judge that he does not intend to respond to the objection.  An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects; the District Court need not consider frivolous, conclusive, or general objections.  A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen (14) days of being served a copy is barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion accepted by the District Court to which he did not object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Signed, this the 16th day of January, 2015.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE