IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| CEDRIC MCCASKILL | § | PLAINTIFF |
| | § | |
| v. | § | CIVIL NO.: 1:14cv24-HSO-RHW |
| | § | |
| DEPARTMENT OF HEALTH AND | § | DEFENDANT |
| HUMAN SERVICES, SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |

**MEMORANDUM OPINION AND ORDER OVERRULING PLAINTIFF CEDRIC MCCASKILL'S [27] OBJECTIONS, ADOPTING MAGISTRATE JUDGE'S [26] REPORT AND RECOMMENDATION, AND AFFIRMING DECISION OF THE COMMISSIONER**

BEFORE THE COURT are the Objections [27] filed by Plaintiff Cedric McCaskill to the Report and Recommendation [26] of United States Magistrate Judge Robert H. Walker.  The Magistrate Judge reviewed Plaintiff Cedric McCaskill's Motion for Summary Judgment [12] which asked the Court to review the Social Security Administration's denial of his claim for Social Security disability benefits and supplemental security income.  Plaintiff Cedric McCaskill filed a Motion to Expedite Status Conference [16] arguing that the administrative record had been improperly enlarged during the parties' briefing of that Motion [12].  The Magistrate Judge also reviewed an Emergency Motion for Protective Order [21] filed by the Department of Health and Human Services, Social Security Administration.  The Magistrate Judge recommended that the Commissioner of Social Security's decision be affirmed, that the Motion to Expedite Status Conference [16] be denied, and that the Emergency Motion for Protective Order [21] be granted.  Report and Recommendation 14 [26].

1

Plaintiff now objects [27] to the Report and Recommendation [26], and Defendant Department of Health and Human Services, Social Security Administration has filed a Response [28] to the objection.  After review of the record and relevant legal authorities, the Court finds that Plaintiff's Objections [27] should be overruled, that the Magistrate Judge's Report and Recommendation [26] should be adopted in its entirety as the finding of this Court, and that the decision denying disability benefits should be affirmed.

## I. BACKGROUND

A.  The Administrative Law Judge's Decision

Plaintiff Cedric McCaskill ("Claimant") applied for disability insurance benefits and for supplemental security income ("SSI") on February 18, 2009, claiming that he had been under a disability since October 27, 2007.  R. 24, 161 [9]. Defendant Department of Health and Human Services, Social Security Administration ("the Commissioner") initially denied the claim on June 19, 2009, and upon reconsideration on August 17, 2009.  *Id*. at 48.  Claimant filed a request for hearing on September 8, 2009, and a hearing was held on January 5, 2011.  *Id*. at 161.  The Administrative Law Judge ("ALJ") issued a decision denying Claimant's application on January 24, 2011, but the Appeals Council remanded that decision on March 29, 2012, for further findings to be made by the ALJ.  *Id*. at 175-77.

After conducting a second hearing on July 24, 2012, the ALJ determined on November 26, 2012, that:

1. [C]laimant meets the insured status requirements of the Social Security Act through December 31, 2012. . . .

2. [C]laimant has not engaged in substantial gainful activity since October 27, 2007, the alleged onset date (20 CFR 404.1571[]). . . .

3. [C]laimant has the following severe impairments: status post back surgery, illiteracy, and depression (20 CFR 404.1520(c)). . . .

4. [C]laimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, or 404.1526). . . .

5. After careful consideration of the entire record, the undersigned finds [Claimant] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except occasional postural activities, no climbing of ladders, scaffolds or ropes, a sit/stand option allowing for standing up to 30 minutes at a time, walking up to thirty minutes at a time and sitting up to 30 minutes at a time, low stress where there is likely not to be confrontation in the workplace with coworkers, in receiving supervision or dealing with the general public, no timed production work or piece work, and involving simple, routine, repetitive work. . . .

6. [C]laimant is unable to perform any past relevant work (20 CFR 404.1565). . . .

7. [C]laimant was born on August 25, 1968, and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563). . . .

8. [C]laimant has a limited education and is able to communicate in English (20 CFR 404.1564). . . .

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not [C]laimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, [App.] 2). . . .

10. Considering [C]laimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant

3

>numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)). . . .

*Id*. at 26-36. Based on the foregoing, the ALJ concluded that Claimant "has not been under a disability, as defined in the Social Security Act, from October 27, 2007, through the date of this decision . . . ." *Id*. at 37 (citing 20 CFR 404.1520(g)).

For the purposes of his Objections [27], Claimant's disability claim centered on whether he established that he met the criteria of an intellectual disability as set forth in Listing 12.05 of the Social Security Administration's Listing of Impairments, 20 C.F.R. Pt. 404, Subpart P, Appendix 1, which provides in pertinent part:

>12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
>The required level of severity for this disorder is met when the requirements in . . . B [or] C . . are satisfied. . . .
>
>B. A valid verbal, performance, or full scale IQ of 59 or less;
>
>OR
>
>C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[]. . . .

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.05.

>The ALJ found that
>
>[t]he severity of [Claimant's] mental impairments . . . do not meet or medically equal the criteria [L]isting 12.05C because the evidence does not support significant adaptive deficits before age 22, despite [Claimant] being in special education which is attributable to his low

4

> cognitive abilities. [Claimant's] work record reveals a long period of sustained employment as a longshoreman off-shore, which indicates a person with substantial adaptive skills.

*Id*. The ALJ noted that Dr. Scuddy F. Fontenelle III, Ph.D., performed psychological testing of Claimant and prepared a report dated April 15, 2009, which reflected that Claimant's full scale IQ score was 69. The ALJ also noted that he received a letter dated August 20, 2012, in which Dr. Fontenelle opined that this IQ score was valid. *Id*. at 33, 35. The ALJ also considered an April 24, 2012, psychological evaluation performed upon Claimant by Dr. Patsy Zakaras, Ph.D., which resulted in a full scale IQ score of 59. *Id*. at 34. The ALJ summarized Dr. Zakaras' findings that Claimant "was capable of performing routine, repetitive tasks, following and understanding directions, and responding to supervision and relating to others[,]" and that Claimant displayed "good abilities in the area of making occupational adjustments, . . . good ability to understand, remember and carry out simple job instructions, [and] good and unlimited" abilities to make personal/social adjustments. *Id*.

The ALJ afforded "significant weight" to Dr. Fontenelle's finding that Claimant experiences depression, but did not assign "significant weight" to the opinion that Claimant's "ability to perform routine, repetitive tasks is seemingly compromised by his pain symptoms and his depression." *Id*. at 35. The ALJ reasoned that Claimant "indicated that he takes very little pain medication and that he manages with over-the-counter medications[,]" and "the evidence of record does not indicate[] that [Claimant] suffers from a severe, disabling level of

5

depression." *Id*. The ALJ gave "significant weight" to Dr. Zakaras' assessment "because it appears to comport with the psychological examinations, claimant's reported activities of daily living, his work-related activities, and the record as a whole." *Id*. at 35-36.

Claimant sought review of the ALJ's November 26, 2012, decision before the Appeals Council. *Id*. at 1. On November 27, 2013, the Appeals Council "found no reason under [its] rules to review the Administrative Law Judge's decision," and "denied [Claimant's] request for review." *Id*. Claimant then filed his Complaint [1] in this Court on January 22, 2014, seeking remand "to the Social Security Administration for consideration of . . . new medical evidence." Compl. 2 [1]. Claimant moved for summary judgment on July 21, 2014, speculatively asserting that the ALJ's written request to Dr. Zakaras to confirm the validity of the IQ score was an attempt "to steer [Dr. Zakaras] into making a statement that the test score was not valid[,]" that "[t]he obvious redaction of Zakaras' response" does not comport with "the appearance of justice[,]" and concluding that the 59 IQ score reported by Dr. Zakaras mandated a favorable ruling under Listing 12.05B. Mem. in Supp. of Mot. for Summ. J. 6, 10, 11-12 [13]. Claimant contended that once Dr. Fontenelle informed the ALJ that the 69 IQ score was valid, the ALJ "should have found [Claimant] disabled pursuant to [L]isting 12.05C" based on a comment the ALJ made at the July 24, 2012, hearing. *Id*. at 10.

6

B.  The Magistrate Judge's Report and Recommendation

On January 16, 2015, the Magistrate Judge entered his Report and Recommendation [26]. The Magistrate Judge determined that the ALJ applied the correct law for determining disability and explained his rationale for assigning "significant weight" to Dr. Zakaras' assessment. Report and Recommendation 8, 10 [26]. The Magistrate Judge found that regardless of Claimant's IQ score, the applicable regulations required Claimant to produce evidence "satisfying the diagnostic definition of intellectual disability—he must demonstrate 'significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested . . . before age 22[]'" to establish disability. *Id.* at 11. The Magistrate Judge found that the evidence did not establish the existence of deficits in Claimant's "adaptive functioning," and this supported the ALJ's finding that despite Claimant's reported IQ scores, Claimant did not have the required adaptive deficits. *Id.* at 12.

C.  Claimant's Objections

On January 28, 2015, Claimant filed Objections [27] to the Magistrate Judge's Report and Recommendation. Claimant argues that "he has presented sufficient evidence to show that he meets or equals" a Listing 12.05B or 12.05C and thus "is conclusively presumed to be disabled." Objections 12 [27]. With respect to Listing 12.05B, Claimant supports his contention by relying on the fact that Dr. Zakaras "set [Claimant's] IQ at 59 . . . ." *Id.* Claimant acknowledges that the ALJ had concerns about the validity of the IQ scores reported by both Dr. Zakaras and

7

Dr. Fontenelle, and that the ALJ sought clarification from Dr. Zakaras regarding her view of the validity of the IQ scores she reported, but the record does not contain a response from Dr. Zakaras. *Id*. at 7-8.  Claimant contends that the administrative record cannot be considered complete absent a response from Dr. Zakaras to the ALJ's inquiry. *Id*.  As to Listing 12.05C, Claimant points out that at the July 24, 2012, hearing, the ALJ stated that he thought the evidence supported a finding that Claimant had significant adaptive deficits before the age of 22 and that the ALJ's only concerns related to the validity of the IQ scores. *Id*. at 13. Claimant notes that Dr. Fontenelle subsequently clarified his view as to the validity of the 69 IQ score that he reported. *Id*.  Claimant maintains that the ALJ's subsequent written opinion finding only that Claimant did not meet the requirements of Listing 12.05C with respect to adaptive deficits represents a "change of opinion by the ALJ [that] is not supported by the record." *Id*. at 13-14.

## II. ANALYSIS

A.  Standard of Review

Because Claimant has filed Objections [27] to the Magistrate Judge's Report and Recommendation [26], this Court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also Longmire v. Gust*, 921 F.2d 620, 623 (5th Cir. 1991) (party filing written objections is "entitled to a de novo review by an Article III Judge as to those issues to which an objection is made").  In reviewing the Commissioner's decision, the Court considers only whether the

Commissioner applied the proper legal standards and whether substantial evidence in the record supports the decision. *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) (citation omitted).

Substantial evidence must be more than a scintilla, but it need not be a preponderance. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (citation omitted). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quotation omitted). Under this standard, a court cannot "re-weigh the evidence or substitute [its] judgment for that of the Commissioner." *Id.* (quotation omitted).

To the extent that a plaintiff does not object to portions of a magistrate judge's report and recommendation, a court need not conduct a de novo review of the report and recommendation. 28 U.S.C. § 636(b)(1). In such cases, a court need only review the report and recommendation and determine whether it is either clearly erroneous or contrary to law. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989).

B.  Standard for Entitlement to Social Security Benefits

The United States Court of Appeals for the Fifth Circuit has explained that

> to qualify for [Social Security Income], a claimant must suffer from a disability. *See* 42 U.S.C. § 423(d)(1)(A). The Social Security Act defines a disability as a "medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity." *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002); *see also* 42 U.S.C. § 423(d)(1)(A).

9

*Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014). "The Commissioner typically uses a sequential five-step process to determine whether a claimant is disabled within the meaning of the Social Security Act." *Id.* (citing 20 C.F.R. § 404.1520; *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)). The Fifth Circuit has described the five-step analysis as follows:

> First, the claimant must not be presently working. Second, a claimant must establish that he has an impairment or combination of impairments which significantly limit [her] physical or mental ability to do basic work activities. Third, to secure a finding of disability without consideration of age, education, and work experience, a claimant must establish that his impairment meets or equals an impairment in the appendix to the regulations. Fourth, a claimant must establish that his impairment prevents him from doing past relevant work. Finally, the burden shifts to the Secretary to establish that the claimant can perform the relevant work. If the Secretary meets this burden, the claimant must then prove that he cannot in fact perform the work suggested.

*Copeland*, 771 F.3d at 923 (citing *Waters*, 276 F.3d at 718).

C.  The Magistrate Judge Correctly Determined that Claimant's Motion to Expedite Status Conference [16] Should Be Denied and that Defendant's Motion for Protective Order [21] Should Be Granted

Claimant contends that the record in this matter is incomplete and thus "the recommendation to grant Defendant's [M]otion for [P]rotective [O]rder preventing [Claimant] from taking the deposition of Dr. Zakaras is error[, or i]n the alternative, this matter should at a minimum be set for a status hearing." Objections 8 [27]. Where an administrative record is incomplete, the proper remedy generally is to remand the claim to the Commissioner for a new hearing. *See, e.g.*, *McCray v. Califano*, 483 F. Supp. 128, 132 (M.D. La. 1980). Claimant has not provided the Court with any legal authority altering the general rule that claims for disability

10

benefits be remanded where the administrative record is found to be incomplete. Therefore, to the extent Claimant complains that the record is incomplete and should have been further developed in proceedings before this Court, the Court finds that the Magistrate Judge correctly recommended denial of Claimant's Motion to Expedite Status Conference [16] and correctly recommended that Defendant's Motion for Protective Order [21] be granted.

D.  The ALJ's Decision Not to Further Attempt to Obtain Dr. Zakaras' Comments Regarding the Validity of the IQ Scores She Reported Does Not Mandate Remand

Claimant complains that he presented sufficient evidence demonstrating that he satisfies the listing set forth in Listing 12.05B on the ground that Dr. Zakaras set Claimant's IQ score at 59. Objections 12 [27]. Claimant does not argue that substantial evidence supports a finding that he must be considered disabled pursuant to Listing 12.05B, and he relies entirely upon Dr. Zakaras' IQ score of 59. *Id*. at 12-13, 14-15. More specifically, the basis of Claimant's objection pertaining to Listing 12.05B is his theory that once an IQ score of 59 or less is produced, the inquiry must cease and the ALJ must find in favor of Claimant. *See id*. at 12 ("The court appointed expert set [Claimant's] IQ at 59, putting him within [Listing] 12.05B. . . . The inquiry should stop there."); 14-15 ("If Dr. Zakaras validated her score, the ALJ and the [Magistrate Judge] are clearly wrong in not applying the conclusive presumption of disability in [Listing] 12.05B.").

Contrary to Claimant's position, the Fifth Circuit has indicated that an ALJ is not required to accept without question an IQ score at or below the score of 59.

*Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989); *see also Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("An ALJ may make factual determinations on the validity of IQ tests.") (citing *Pierre*, 884 F.2d at 803).[1]

At the July 24, 2012, hearing, the ALJ expressed that "the validity of the IQ scores" was an issue for him, and he sent correspondence to Dr. Zakaras in an effort to obtain Dr. Zakaras' clarification as to the validity of the IQ scores she reported. R. 44-45, 62 [9]. To the extent Claimant contends that the ALJ incorrectly failed to obtain Dr. Zakaras' clarification as to the validity of the IQ score she reported, the Court is not persuaded by Claimant's argument. As noted *supra*, Fifth Circuit precedent does not place the determination of the validity of IQ scores solely within the purview of Dr. Zakaras. *See Muse*, 925 F.2d at 790 (citation omitted). This approach comports with regulations pertaining to the evaluation of disability claims predicated upon mental disability. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(D)(6) ("The results of standardized intelligence tests *may* provide data that *help* verify the presence of intellectual disability . . . . However, since the results of intelligence tests *are only part of the overall assessment*, the narrative report that accompanies the test results *should comment* on whether the IQ scores are

---

[1] This appears to be the law in five other federal circuits as well. *See, e.g.*, *Lax v. Astrue*, 489 F.3d 1080, 1087 (10th Cir. 2007) (affirming ALJ decision that applicant's IQ scores were not an accurate measurement of his functioning rather than remanding for new sets of IQ tests); *Markle v. Barnhart*, 324 F.3d 182, 187 (3rd Cir. 2003) (noting an ALJ can reject IQ scores that are inconsistent with the record but holding that in that case the record did not support the ALJ's decision); *Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998) ("Commissioner is not required to accept an applicant's IQ scores, however, and may reject scores that are inconsistent with the record."); *Popp v. Heckler*, 779 F.2d 1497, 1500 (11th Cir. 1986) ("[T]he ALJ [is] not required to find that [a claimant is] mentally [disabled] based on the results of the IQ test. The ALJ is required to examine the results in conjunction with other medical evidence and the claimant's daily activities and behavior."); *Strunk v. Heckler*, 732 F.2d 1357, 1360 (7th Cir. 1984) ("The plaintiff has failed to supply this court, nor have we found any case law requiring the Secretary to make a finding of mental [disability] based solely upon the results of a standardized intelligence test . . . .").

considered valid and consistent with the developmental history and the degree of functional limitation.") (emphasis added).  Therefore, even if the ALJ had made efforts beyond those he did exert to obtain Dr. Zakaras' clarification as to the validity of the IQ scores she reported, the ALJ would have still been entitled to assess the validity of the scores in the context of the record as a whole.  Claimant's objection does not sufficiently address the 59 IQ score in the context of other evidence in the record.  The Court thus finds that Claimant's objection related to Listing 12.05B should be overruled.

E.  The Magistrate Judge Correctly Concluded that the ALJ's Finding that Claimant Was Not Disabled Pursuant to Listing 12.05C Is Supported By Substantial Evidence

According to Claimant, Dr. Fontenelle's valid IQ score of 69 places Claimant within Listing 12.05C.  Objections 12 [27].  Claimant contends that the Magistrate Judge "incorrectly" viewed the ALJ as having found that the criteria of Listing 12.05C had not been met or medically equaled "because the evidence does not support significant adaptive deficits before age 22, despite [C]laimant's having been in special education."  *Id*. at 16.  To support this argument, Claimant points to the July 24, 2012, hearing transcript and the ALJ's comment that he thought Claimant met two of the three elements for Listing 12.05C:

> I think [Claimant] meets at least two of the three elements -- that being adaptive deficits before age 22 and additional physical and/or mental impairment.  I think he has both physical and mental things going on that would satisfy that requirement.
>
> The issue for me, though, is the validity of the IQ scores.

*Id*. at 12-13 (quoting R. at 62 [9]).  Relying upon the ALJ's comment regarding adaptive deficits, Claimant argues that once Dr. Fontenelle opined as to the validity of the 69 IQ score he reported, "[t]he inquiry should stop there."  *Id*. at 12.

As an initial matter, "[p]rocedural perfection in administrative proceedings is not required . . . ."  *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)) (internal marks omitted).  "[P]rocedural improprieties . . . will therefore constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision."  *Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009) (treating as an impropriety an ALJ's mistaken statement in written determination that an injury to claimant's spine had been repaired) (quoting *Morris*, 864 F.2d at 335).  Although the ALJ commented at the hearing that he thought Claimant met the Listing 12.05C elements related to adaptive deficits before age 22 and additional physical and/or mental impairment, the ALJ did not state any grounds supporting his comment at the time.[2]  R. at 62 [9].  The record indicates that the ALJ made the comment after a fourteen minute period in which the ALJ "went off the record so [he] could review some of the materials . . . primarily related to the IQ scores from . . . Dr. Fontenelle and Dr. [Zakaras]."  *Id*.  Claimant makes no showing in his Objections, and the record does not support a finding, that the ALJ's

---

[2] To the extent Claimant treats the ALJ's comment as a "finding of fact," Claimant does not cite and the Court has not located any legal authority construing an ALJ's comments at an administrative hearing as conclusive and binding findings of fact.  *Cf. P.C.S. v. U.S. Com'r Soc. Sec. Admin.*, No. 09-CV-1849, 2011 WL 4499368, at *1 (W.D. La. Sept. 27, 2011) (finding that "the ALJ's written decision, giving findings of fact and the reasons for his decision to deny the claim, controls over statements made at the administrative hearing in this matter to the extent [the claimant] finds there is a conflict").

statement at the administrative hearing "cast[s] into doubt the existence of substantial evidence to support the ALJ's decision."[3]

A review of the record as a whole reveals that the ALJ's finding that Claimant was not disabled pursuant to Listing 12.05C is supported by substantial evidence. Contrary to Claimant's assertion, the Magistrate Judge correctly noted that the ALJ specifically found in his written decision that

> [t]he severity of [Claimant's] mental impairments, considered singly and in combination, do not meet or medically equal criteria of [L]isting 12.05C because the evidence does not support significant adaptive [functioning] deficits before age 22, despite [Claimant] being in special education which is attributable to his low cognitive abilities. [Claimant's] work record reveals a long period of sustained employment as a longshoreman off-shore, which indicates a person with substantial adaptive skills.

R. 27 [9]. "Adaptive functioning" as used in Listing 12.05 refers to a "person's effectiveness in areas such as social skills, communication, and daily living skills, and how well the person meets the standards of personal independence and social responsibility expected of his or her age by his or her cultural group." *Heller v. Doe by Doe*, 509 U.S. 312, 329 (1993) (citation omitted); *see also Novy v. Astrue*, 497 F.3d 708, 710 (7th Cir. 2007) (noting that the term "deficits in adaptive functioning[] . . . denotes inability to cope with the challenges of ordinary everyday life") (citation omitted).

---

[3] Although Claimant suggests that he "relied" upon the ALJ's comment, Claimant makes no effort to state the nature or extent of his reliance and does not address the reasonableness of any such reliance given the circumstances surrounding the ALJ's comment. *See* Objections 13 [27]. Nor does Claimant contend that the ALJ's statement at the hearing somehow prevented Claimant from producing additional evidence to show that Claimant suffered from adaptive functioning deficits prior to the age of 22. *See generally*, *id.* at 2-18.

In his written decision, the ALJ gave "significant weight" to evidence produced by Dr. Zakaras which revealed that Claimant

> seemed capable of performing routine, repetitive tasks, following and understanding directions, and responding to supervision and relating to others[,] . . . [displayed] good abilities in the area of making occupational adjustments, with the exception of maintaining attention/concentration which she described as fair[,] . . . good ability to understand, remember and carry out simple job instructions[,] . . . fair ability to understand, remember and carry out complex or detailed, but not complex [sic] job instructions[, and] good and unlimited" abilities in the area of making personal or social adjustments.

R. 34 [9]. Dr. Zakaras' Psychological Evaluation indicates that Claimant was not unable to cope with the challenges of ordinary, everyday life in that Dr. Zakaras noted Claimant lives on his own, "takes no medications[,] . . . has not been in counseling[,] . . . has no history of psychiatric hospitalization[,]" performs his own chores such as "cleaning the yard, washing clothes, . . . mowing [the lawn], [and] cook[ing]." Id. at 643-44. Dr. Zakaras further noted that Claimant's "thought processes were logical and goal oriented[,] . . . [and his r]ecent and remote memory were fairly good." Id. at 644. In addition, Claimant was employed as a longshoreman from approximately 1992 through October 2007, working seven days a week, twelve hours a day. Id. at 273-74.

This record evidence reflects strongly on Claimant's social skills, communication abilities, daily living skills, and ability to remain personally independent. The Court cannot conclude that the ALJ's finding that Claimant did not suffer from adaptive functioning deficits manifesting themselves prior to his having reached the age of 22 is not supported by substantial evidence. See, e.g.,

*Vaughn v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (affirming ALJ's finding of no disability as supported by substantial evidence due in part to the fact that "the record reflects that [the claimant] was able to, and did, work for several years while suffering from ailments she now asserts are disabling"); *Muse*, 925 F.2d at 789-90 (finding substantial evidence supported the ALJ's finding that claimant was not mentally disabled notwithstanding an IQ score of 58 based, in part, on the fact that "[t]here was no evidence in the record that [the claimant] had ever been fired from a job because he could not comprehend, remember, or carry out the mental . . . duties" and thus the claimant's "work experience belie[d] that he was [mentally disabled]").

The Commissioner applied the correct legal standard. This Court cannot "re-weigh the evidence or substitute [its] judgment for that of the Commissioner[,]" and supported by substantial evidence, the ALJ's finding related to Listing 12.05C will not be disturbed. *Boyd*, 239 F.3d at 704 (quotation omitted). The Magistrate Judge correctly affirmed the ALJ's decision that Claimant has not established a disability pursuant to Listing 12.05C. The Court finds that Claimant's objections related to Listing 12.05C should be overruled, and the Magistrate Judge's recommendation affirming the ALJ's decision as to this listing will be adopted as the opinion of this Court.

### III. CONCLUSION

As required by 28 U.S.C. § 636(b)(1), the Court has conducted an independent de novo review of the record and those matters raised in the Claimant's Objections. For the reasons set forth above, the Court concludes that Claimant's Objections [27]

should be overruled.  To the extent Claimant did not object to portions of the Magistrate Judge's Report and Recommendation [26], the Court finds that those portions are neither clearly erroneous nor contrary to law.  *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989).  The Commissioner's decision denying Claimant's claim for disability benefits is supported by substantial evidence and comports with the relevant legal standards.  The Magistrate Judge's Report and Recommendation [26] will be adopted as the finding of the Court.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Objections [27] filed by Plaintiff Cedric McCaskill are **OVERRULED**, and the Report and Recommendation [26] of Magistrate Judge Robert H. Walker is adopted in its entirety as the finding of this Court.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that Plaintiff Cedric McCaskill's Motion to Expedite Status Conference [16] is **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that Defendant Department of Health and Human Services, Social Security Administration's Emergency Motion for Protective Order [21] is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the decision of the Commissioner is **AFFIRMED**. A separate judgment will be entered in accordance with this Order as required by Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED**, this the 30th day of March, 2015.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE